## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

AMERICAN 1 CREDIT UNION,

               Plaintiff,                    CASE NO. 19-11943
                                          HON. DENISE PAGE HOOD

v.

DAVID PUCKETT,

               Defendant.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL DISMISSAL OF COUNTERCLAIM PURSUANT TO RULE 12(b)(6) [#11] and GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DISMISSAL OF COMPLAINT PURSUANT TO RULE 12(b)(6) AND RULE 56 [#16]

## I.    INTRODUCTION

Plaintiff American 1 Credit Union filed this action in Jackson County Circuit Court on May 17, 2019 and removed to this Court on June 28, 2019.  Plaintiff alleges claims against Defendant for: (1) breach of contract; (2) statutory conversion; (3) breach of fiduciary duty; and (4) declaratory relief.  On July 1, 2019, Defendant David Puckett filed his answer and a counter-complaint.  After Plaintiff moved for dismissal of Defendant's counter-complaint, Defendant filed an amended counter-complaint that alleges the following claims: (a) failure to pay benefits due under the 2017 Supplemental Executive Retirement Plan, in violation of ERISA; (b) equitable

estoppel; (c) reformation of contract; (d) declaratory relief; and (e) indemnification.

On August 26, 2019, Plaintiff filed its Motion for Partial Dismissal of Defendant's Amended Counter-Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Plaintiff's Motion"). ECF No. 11.  On October 3, 2019, Defendant filed his Motion to Dismiss Plaintiff's Complaint ("Defendant's Motion"). ECF No. 16.  Both motions have been fully briefed.  For the reasons that follow, the Court grants in part and denies in part Plaintiff's Motion and grants in part and denies in part Defendant's Motion.

## II.    BACKGROUND

Plaintiff is a not-for-profit state chartered credit union.  Plaintiff is governed by a Board of Directors, and the Board of Directors created an Executive Committee on which the chair, vice chair, secretary, and treasurer of the Board of Directors serve. Defendant was the Chief Executive Officer of Plaintiff from 1982 until he retired on January 4, 2018.  At the time of his retirement, Defendant's annual salary was approximately $800,000, he drove a company car, and he had a defined benefit plan (the "Plan").

The Plan was established in 2002, when the parties entered into a "top hat" plan for the purpose of compensating Defendant upon his retirement for his years of service to Plaintiff.  The parties executed a written "Agreement" on November 19, 2002 (the

"2002 Plan Agreement"). The 2002 Plan Agreement provided for an amount of benefits to be paid to Defendant (85% of his annual base salary at age 65 for 15 years, then 50% of his annual base salary at age 65 for the next 10 years) and required Defendant to provide at least 250 hours of consulting services each year after his retirement. ECF No. 18, Ex. D, at ¶¶ 1, 6, Ex. A. The 2002 Plan Agreement further provides that it is "the entire agreement of the parties," and that it "may not be amended, altered or modified, except by written agreement, signed by the parties hereto…" ECF No. 18, Ex. D at ¶ 15.

In 2006, Plaintiff's Board of Directors approved the restatement of the 2002 Plan Agreement, with the Plaintiff "establishing" a Nonqualified Deferred Compensation Plan Adoption Agreement ("2006 Adoption Agreement") and a Basic Plan Document (the "2006 Plan"). The 2006 Adoption Agreement states that the Plan consists of "the Basic Plan Document, this Adoption Agreement and all other Exhibits and documents to which they refer." ECF No. 18, Ex. F at 1. At Section 1.19 of the 2006 Adoption Agreement, the 2002 Plan Agreement is expressly referenced ("This Plan is a restated Plan and is restated effective as of January 1, 2005. The Plan is restated to comply with Code §409A. The Plan was originally effective November 19, 2002.").

In 2007, Plaintiff restated the Plan again, this time in the 2007 version of the

Nonqualified Deferred Compensation Plan Adoption Agreement ("2007 Adoption Agreement") and a Basic Plan Document (the "2007 Plan"). At Section 1.20 of the 2007 Adoption Agreement, the 2002 Plan Agreement is expressly referenced ("This Plan is a restated Plan and is restated effective as of January 1, 2008. The Plan is restated to comply with Code §409A. The Plan was originally effective November 19, 2002.").

Both the 2006 and 2007 Plans state that the amount of Defendant's benefit is "85% of the Participant's annual base salary at age 66," not at the age of his retirement. ECF No. 11, Ex. F at Ex. A; ECF No. 11, Ex. G at Ex. B. Both the 2006 and 2007 Plans also state that "The Plan does not apply a vesting schedule or other Substantial Risk of Forfeiture." ECF No. 11, Ex. E at 3.01(a); ECF No. 11, Ex. G at 3.01(a). Defendant signed the 2007 Adoption Agreement, but the Chairman of the Board of Directors signed all of the other documents related to the 2006 and 2007 Plans, including the exhibits containing the benefit amounts for Defendant.

Plaintiff's Executive Committee met on June 22, 2017, and Defendant was present. At that meeting, Executive Committee members discussed giving Defendant – and Defendant alleges he was promised – additional Plan benefits of $200,000 per year and a retirement present of the 2017 Ford Explorer he was driving as a company car. Plaintiff alleges that Defendant's receipt of those additional benefits was

4

contingent on the approval by the Board of Directors, but the Board of Directors never met to approve those benefits, nor did it execute a consent resolution to do the same. Defendant alleges that four of the Board of Directors agreed to approve those additional benefits – three of them at the Executive Committee meeting on June 22, 2017 and a fourth member of the Board of Directors who allegedly agreed to those additional benefits at some unspecified time subsequent to that meeting.   The additional benefits were not approved at any Board of Directors meeting, including the December 2017 meeting of the Board of Directors.

When Defendant retired on January 4, 2018, he kept the 2017 Ford Explorer. Title to the 2017 Ford Explorer was transferred to Defendant, and Defendant paid sales tax in the mount of $2,664.00, based on a purchase price of $44,400.00.  Plaintiff issued Defendant a W-2 for 2018 that included compensation in the amount of $44,400 for "AUTO."  In February 2019, Plaintiff demanded that Defendant return the 2017 Ford Explorer.

## III.    STANDARD OF REVIEW

### A.    The Proper Standard of Review

Plaintiff's Motion is properly premised on Rule 12(b)(6).  Defendant's Motion is premised on Rule 12(b)(6) and Rule 56, neither of which the Court finds appropriate.  First, in this case, where discovery has not commenced, the Court will

not evaluate what evidence has been or can be produced. *See* Rule 56(a), 56(c), 56(d)(1).  Accordingly, at this time, the Court declines (and denies) Defendant's invitation to conduct a review of this matter pursuant to Rule 56.

Second, Defendant's reliance on Rule 12(b)(6) is not proper because Defendant filed his Answer to the Complaint before filing the Motion. *See* Rule 12(b) ("A motion asserting any of these defenses [under Rule 12(b)] must be made <u>before</u> pleading if a responsive pleading is allowed.") (emphasis added).  Defendant's Motion should have been filed as a motion for judgment on the pleadings pursuant to Rule 12(c). *See* Rule 12(c) ("<u>After</u> the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.") (emphasis added).

Given the early stages of this case and that trial will not be delayed, the Court will treat Defendant's Motion as one brought pursuant to Rule 12(c).  In deciding a motion brought pursuant to Rule 12(c), the standard is the same as that used in evaluating a motion brought under Rule 12(b)(6). *See, e.g., Stein v U.S. Bancorp, et. al*, 2011 U.S. Dist. LEXIS 18357, at *9 (E.D. Mich. February 24, 2011).

## B.     Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint.  The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee*

*Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007);  *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).   As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556.  Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555.  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ANALYSIS RE: DEFENDANT'S MOTION

### A.    Breach of Contract and Declaratory Relief

Defendant contends that Plaintiff's claims for breach of contract (Count I) and declaratory relief (Count IV) must be dismissed as a matter of law.  Defendant argues that those claims are based on the enforcement of employee benefit plans, which means that they are preempted by ERISA.  Section 514(a) of ERISA provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in [29 U.S.C. § 1003(a)] and not exempt under [29 U.S.C. § 1003(b)].

7

29 U.S.C. § 1144(a).  Under ERISA, a civil action may be brought by a "participant, beneficiary or fiduciary" of ERISA trusts for relief under various sections or subsections of the statute. 29 U.S.C. § 1132(a). "Courts narrowly construe ERISA to permit only the parties specifically enumerated to bring suit." *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004).

Plaintiff asserts that it is an "employer" under ERISA and that "Section 1132 does not expressly provide for a civil action by an employer." *St. Francis Hosp. and Med. Ctr. v. BCBS of Conn., Inc.*, 776 F.Supp. 659, 661 (D. Conn. 1991).  Plaintiff maintains that because it is not a participant, beneficiary or any other class of parties who can bring an ERISA action, ERISA does not preempt its state law claims for breach of contract and for declaratory relief. Citing *Infantino v. Transamerica Ins. Group*, 66 F.3d 335; 1995 WL 542533, at *3 (9th Cir. 1995) (citations omitted) ("Without standing to enforce ERISA, there can be no ERISA preemption."); *Ward v. Alternative Health Delivery Systems, Inc.*, 261 F.3d 624, 627 (6th Cir. 2001) (holding that the plaintiff's "claims are not the equivalent of civil enforcement actions under ERISA because she does not have ERISA standing."); *Mich. Affiliated Healthcare v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 550 (6th Cir. 1998) ("§ 1132 preempts state claims by 'participants or beneficiaries' to enforce certain rights guaranteed by ERISA. Claims by anyone other than a 'participant or beneficiary,'

however, fall outside the scope of ERISA's civil enforcement section.").

Defendant argues that *St. Francis* is inapplicable as the plaintiff in that case was seeking relief under an agreement for the administration of benefit plans, not the enforcement of rights under the benefit plan. Citing *St. Francis*, 776 F.Supp. at 660-62. More poignantly, Defendant asserts that Plaintiff is a "fiduciary" under ERISA and has the power to file a civil action seeking legal and equitable relief for violations of the terms of a benefit plan. Citing 29 U.S.C. § 1132(a)(2), (3) (a fiduciary may seek to "enjoin any act or practice which violates . . . the terms of the plan").

A "fiduciary" under ERISA is a person (an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization). 29 U.S.C. § 1002(9). A fiduciary may be a party in interest, 29 U.S.C. § 1002(14)(A), if the fiduciary "exercises any discretionary authority or discretionary control respecting management of such plan … or he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Defendant contends that Plaintiff's claim that Defendant violated the Plan when he failed to provide consulting services relates directly to rights and obligations under an ERISA plan, such that the breach of contract claim is preempted by ERISA and

must be dismissed.[1]  In support of his contention, Defendant cites Paragraph E. of the

Recitals in the 2002 Plan Agreement, which states:

> E.    [Plaintiff] wishes to be sure that [Defendant] will be entitled
> to a specific amount of retirement benefits for some definitive period of
> time after his retirement from active service with [Plaintiff].

ECF No. 11, PgID 237 (Ex. C).

For the reasons stated by Defendant, the Court finds that Plaintiff is a fiduciary.

Plaintiff has not disputed that it "exercises . . . discretionary authority or discretionary

control respecting management of [the Plan] … [and] . . . has . . . discretionary

authority or discretionary responsibility in the administration of such plan." 29 U.S.C.

§ 1002(21)(A).  The Court also concludes that Plaintiff's breach of contract claim

bears a relationship to an ERISA plan because that claim is based on the rights and

obligations of the parties to the 2002 Plan Agreement (as amended in 2006 and 2007).

*D'Avanzo v. Wise & Marsac, P.C.*, 223 Mich.App. 314, 322 (1997).  The Court holds

that Plaintiff's state law breach of contract claim is preempted by ERISA. *See, e.g.,*

*Brinker v. Mich. Bell Tel. Co.*, 152 Mich.App. 729, 732 (1986).  For the same reasons,

Plaintiff's claim for declaratory relief is preempted by ERISA, to the extent that claim

---

[1]Defendant argues in the alternative that Plaintiff made it impossible for him to provide consulting services when Plaintiff restricted all communication between Defendant and Plaintiff (allowing Defendant to speak only with the new CEO (Martha Fuerstenau) and Plaintiff's legal counsel).  This argument, even if true, requires a factual determination and cannot be decided as a matter of law on the pleadings.

is based on the Plan.

**B.    Statutory Conversion**

In Michigan, a statutory conversion claim lies when a plaintiff can show that a person stole or embezzled property, or converted the property to that person's own use. *See* M.C.L. § 600.2919a(1)(a) ("A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees: (a) Another person's stealing or embezzling property or converting property to the other person's own use. . . .").

Defendant argues that the 2017 Ford Explorer was a gift to him and, even if it was not a gift to him, the evidence demonstrates that Plaintiff's Chief Financial Officer caused the vehicle to be transferred to Defendant such that Defendant could not have intentionally, wrongfully, or unlawfully converted possession of the 2017 Ford Explorer to his own use.  The Court finds that Defendant's reliance on the evidence is premature, as the only question before the Court is whether Plaintiff sufficiently pleaded a claim for statutory conversion.  As courts have recently held:

> In order to prevail on a claim for statutory conversion, a plaintiff must satisfy the elements of a common law conversion claim, as well as demonstrate that the defendant had "actual knowledge" of the converting activity. *See Echelon Homes, LLC v. Carter Lumber Co.*, 472 Mich. 192, 694 N.W.2d 544, 547–48 (2005) (holding that under Michigan's conversion statute, "constructive knowledge is not sufficient; a defendant must know that the property was stolen, embezzled, or converted.").

11

*Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F. Supp. 3d 874, 886 (E.D. Mich. 2015), *aff'd*, 646 F. App'x 418 (6th Cir. 2016).  A common law conversion claim requires allegations of "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 390 (1992). "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agric. v. Appletree Mktg. LLC*, 485 Mich. 1, 14 (2010).

Plaintiff alleges that:

34.    In around January, 2018, just prior to his retirement, [Defendant] approached a subordinate employee and directed her to sign over to him the title to a 2017 Ford Explorer (the "Vehicle"), which was owned by [Plaintiff] and which [Defendant] had been allowed to use as CEO.

35.    The subordinate employee complied with [Defendant]'s request and provided [Defendant] the title to the Vehicle.

36.    As [Defendant] acknowledged, the Board of Directors needed to vote on [Defendant]'s request for ownership of the vehicle.  The Board of Directors did not vote on or ever approve transfer of the Vehicle to [Defendant].

37.    [Plaintiff] has demanded that [Defendant] return the Vehicle, but [Defendant] has refused.

ECF No. 1, at ¶¶ 34-37.  The Court finds that Plaintiff's allegations satisfy the common law conversion elements when it pleaded that Defendant wrongfully exerted

domain over Plaintiff's personal property inconsistent with his rights to such property and/or continued to possess it in an improper way when he kept the 2017 Ford Explorer without approval of Plaintiff (its Board of Directors) and when Plaintiff demanded its return. The Court also finds that, based on the allegations set forth above, Plaintiff adequately pleaded that Defendant had actual knowledge of his converting activity and knew that the property was stolen, embezzled, or converted when he directed an employee to sign over to Defendant the title to the 2017 Ford Explorer to Defendant.

The Court denies Defendant's motion to dismiss Plaintiff's statutory conversion claim.

## C.     Breach of Fiduciary Duty

Defendant argues that Plaintiff has failed to "provide **any** factual support in showing that [Defendant] breached his fiduciary duties as CEO of" Plaintiff, such that Defendant does not have notice of the basis for the breach of fiduciary duty claim. ECF No. 16, PgID 456 (emphasis in original).

"The elements of a fiduciary duty claim are (1) the existence of a fiduciary duty, (2) a breach of that duty, (3) proximately causing damages." *Stryker Corp. v. Ridgeway*, 2015 WL 8759220, at *3 (W.D. Mich. Dec. 14, 2015) (citations omitted); *Delphi Auto. PLC v. Absmeier*, 167 F.Supp.3d 868, 884 (E.D. Mich. 2016). The Court

finds that Defendant has sufficiently alleged a breach of fiduciary duty claim against Defendant.  Plaintiff has alleged that: (a) Defendant was CEO (an officer) of Plaintiff, ECF No. 1, at  ¶¶ 9-10; (b) Defendant had fiduciary duties that he owed to Plaintiff, "including duties of honesty, good faith, and loyalty, that required [Defendant] to act in the best interests of [Plaintiff] at all times," ECF No. 1, at  ¶ 51; (c) Defendant breached those duties when he participated in deliberations concerning his compensation and caused the title of the 2017 Ford Explorer to be signed over to him, ECF No. 1, at ¶¶ 52, 25-35; and (d) those breaches caused Plaintiff damages, including loss of the 2017 Ford Explorer, irreparable harm, and monetary damages, ECF No. 1, at  ¶ 53 (*see also* ¶¶ 15, 18, 37)

In its reply, Defendant for the first time argues that Plaintiff's breach of fiduciary duty claim is barred by the statute of limitations, which is three years. Defendant asserts that the allegations of such a breach are based on circumstances that occurred in 2002, when Defendant's Plan was first enacted, and 2006 and 2007, when the Plan was amended.  For those reasons, Defendant contends that the latest point in time that Plaintiff first had knowledge of Defendant's alleged breach of fiduciary duty was in 2007, approximately 12 years before this case was filed.  The Court finds Defendant's argument misplaced, as Plaintiff's allegations cite conduct of Defendant in 2017, 2018, and 2019, *see* ECF No. 1, at ¶¶ 24-38, all of which fall within the three-

year statute of limitations period.

For the reasons stated above, Defendant's motion to dismiss Plaintiff's breach of fiduciary duty claim is denied.

## V.    ANALYSIS RE: PLAINTIFF'S MOTION

Plaintiff asserts that Counts I-III of Defendant's counter-complaint should be dismissed.

## A.    Benefits Under the 2017 SERP

Defendant alleges in his counter-complaint that, as a result of the June 22, 1017 Executive Committee meeting, the Board of Directors approved a Supplemental Executive Retirement Plan ("SERP") that would pay him an additional $200,000 per year and gift to him the 2017 Ford Explorer. *See, e.g.,* ECF No. 10, at ¶¶ 12-30, 71.

Plaintiff contends that the SERP was conditioned on the preparation of a written plan document and approval by the Board of Directors.  Plaintiff argues that Defendant has not alleged that Board of Directors approved the SERP at its December 2017 (or any other) meeting or that Plaintiff ever executed any plan documents related to the SERP.  Alternatively, Plaintiff asserts that any such "plan" is unenforceable because it violates the Michigan Credit Union Act, M.C.L. § 490.342(3), which requires that the "credit union board . . . perform all of the following duties, which the credit union board may not delegate to another person or committee: . . . (c)

Employing a general manager or chief executive officer and fixing his or her compensation."  Plaintiff states that Defendant's SERP claim is based on an alleged offer made by members of the Executive Committee at the June 22, 2017 meeting, but there are no allegations that the Board of Directors approved it on that date or in writing afterward.

Defendant contends that the "Board" of Directors agreed to and adopted finalized terms of the SERP when it expressed the intention to do so at the June 22, 2017 meeting (at which three of the seven Board members were present), and Board member Bishop Combs subsequently agreed with those terms.  Defendant states that when Executive Committee Chairman and Board member Phil Hoffman prepared minutes and circulated them to other members of the Board of Directors, the SERP was memorialized in writing.  Defendant argues that the SERP complies with the MCUA because it was not simply made by the Executive Committee because a majority of the Board of Directors also agreed to it.

The Court finds that Defendant has failed to adequately allege a claim for benefits under the SERP.  Defendant has alleged in Count I that a majority of the Board of Directors agreed to provide David Puckett with the benefits under the SERP and that those benefits were memorialized in writing. *See* ECF No. 10, at ¶ 71 (Plaintiff "by a majority of its Board of Directors, agreed and promised to provide

[Defendant] with the benefits referenced at the June 22, 2017 meeting which benefits were memorialized in writing by [Plaintiff's] Chairman of the Board"). But, the allegations in his counter-complaint do not support the same. At most, Defendant has alleged that three of the seven members of the Board of Directors – at the Executive Committee meeting at which they were the only Board members present – agreed to the SERP, with a fourth member of the Board of Directors allegedly approving the SERP only at some later, unspecified time. The only alleged writing approving the SERP are the minutes prepared regarding the June 22, 2017 Executive Committee meeting, at which only three of the seven Board members could be said to have participated – in other words, the Board members present did not constitute a quorum.

Pursuant to M.C.L. § 490.342(3)(c), only the Board of Directors can fix the compensation of the CEO and "may not delegate [that responsibility] to another person or committee." Despite Defendant's suggestion that the Executive Committee is a distinction without a difference from the Board of Directors, that distinction is critical for purposes of the MCUA and Defendant's SERP claim. In Defendant's counter-complaint, there are no factual allegations that: (1) the Board of Directors ever held a meeting to address or vote on the SERP; (2) four members of the Board of Directors ever gathered and approved the SERP; (3) there is any writing that evidences that the fourth Board member (Bishop Combs) approved the SERP; (4) a

written consent adopting the SERP was signed by all of the Board members entitled to vote in lieu of a meeting; or (5) Plaintiff created any written documents that set forth the terms of the alleged SERP in a manner that would constitute a plan (such as the documents created for the 2002 Plan Agreement, the 2006 Plan, or the 2007 Plan).

## B.   Equitable Estoppel

In Count II of his counter-complaint, Defendant seeks to enforce the alleged offer of benefits by way of ERISA estoppel.  "A civil action may be brought by a participant, beneficiary, or fiduciary … to obtain other appropriate equitable relief … to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132 (3)(B).  The elements of an estoppel claim under ERISA are:

> (1) there must be conduct or language amounting to a representation of material fact; (2) the party to be estopped must be aware of the true facts; (3) the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends; (4) the party asserting the estoppel must be unaware of the true facts; and (5) the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 428-429 (6th Cir. 2006) (citing *Sprague v. General Motors Corp.*, 133 F.3d at 388, 403 (6th Cir.1998)); *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir 2010).

In this case, there does not appear to be any dispute that the terms of the 2002 Plan Agreement (85% of annual base salary at age 65) or the 2006 and 2007 Plans

(85% of annual base salary at age 66) are unambiguous.  In general, a plaintiff "cannot recover under an estoppel theory for misrepresentations which contradict unambiguous, written plan terms because their reliance on the subsequent representation would be unreasonable." *Moore*, 458 F.3d at 429.  If a "plaintiff is attempting to 'invoke equitable estoppel in the case of unambiguous pension plan provisions,' he must demonstrate three further elements: '[(6)] a written representation; [(7)] plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and [(8)] extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.'" *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 350 (6th Cir. 2018) (quoting *Bloemker*, 605 F.3d at 444).

Plaintiff asserts that "estoppel requires reasonable or justifiable reliance by the party asserting the estoppel.  That party's reliance can seldom, if ever, be reasonable or justifiable if it is inconsistent with the clear and unambiguous terms of plan documents available to or furnished to the party." *Sprague*, 133 F.3d at 404.  Plaintiff contends that Defendant could not have reasonably relied on statements from members of the Executive Committee that Plaintiff would make a change to his Plan, as Defendant knew that the Board of Directors had to make any decision regarding his compensation and that the Board of Directors never approved the SERP at a meeting of the Board of Directors or by a written consent resolution.

Defendant argues that a party can "invoke equitable estoppel in the case of unambiguous pension plan provisions" where there are written representations regarding the calculation of benefits that constituted either intentional fraud or such gross negligence as to amount to constructive fraud. Citing *Bloemker*, 605 F.3d at 444. Defendant contends that this case involves extraordinary circumstances because Plaintiff made oral and written representations for more than a decade regarding the calculation of his deferred compensation.  Defendant asserts those representations were either intentionally deceptive or so grossly negligent that Plaintiff committed fraud by continually making a promise it could not keep.  Defendant suggests that the issue of whether to allow or deny equitable relief is a question fact, not law.

Plaintiff argues that, although Defendant advocates that this case involves extraordinary circumstances, Defendant must satisfactorily allege all eight *Bloemker* (*Pearce*) elements.  Plaintiff asserts that, in his counter-complaint (and, generally, in his response brief), Defendant fails to specifically address most of those elements, most significantly the requirement that the Plan provision does not allow for individual calculation of benefits.  Plaintiff further asserts that the 2007 Plan not only benefitted Defendant, but that Defendant actually signed the 2007 Adoption Agreement on behalf of Plaintiff.

In this case, it is undisputed that the 2002 Plan Agreement (85% of annual base

20

salary at age 65) and the 2006 and 2007 Adoption Agreements (85% of annual base salary at age 65) allow for the clear and concise calculation of benefits to which Defendant was entitled. Defendant has adequately alleged, however, that there was a mutual mistake of the parties (even though Defendant signed the 2007 Plan Adoption Agreement) that resulted in the 2007 Plan basing retirement benefits on Defendant's base annual salary at age 66. Defendant has alleged that both he and numerous members of the Board of Directors believed and intended that, as part of his benefits upon retirement, Defendant would receive 70% of his annual base salary at the time he retired, not at age 66. The Court denies Plaintiff's motion to dismiss Defendant's equitable estoppel claim.

## C. Reformation of Contract

In Count III, Defendant alleges that, if the SERP is not a separate agreement from the 2007 Plan, the 2007 Plan must be reformed because both Plaintiff and Defendant were mistaken about the effect and terms of the 2007 Plan and its application upon Defendant's retirement. Defendant asserts that there was a scrivener's error in the 2007 Adoption Plan Agreement.

"Under the doctrine of scrivener's error, the mistake of a scrivener in drafting a document may be reformed based upon parol evidence, provided the evidence is 'clear, precise, convincing and of the most satisfactory character' that a mistake has

21

occurred and that the mistake does not reflect the intent of the parties." *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Murata Eric N. Am., Inc.*, 980 F.2d 889, 907 (3d Cir. 1992); 66 Am. Jur. 2d Reformation of Instruments § 19.

Plaintiff argues that the Court should not apply the scrivener's error doctrine because "neither the Sixth Circuit nor the Supreme Court have directly ruled upon the application of the doctrine of scrivener's error within the context of an ERISA dispute," and at least one court in the Sixth Circuit, has declined to apply the doctrine for that reason. *See Saylor v. Appalachian Regional Hosp.*, 2017 WL 4355556, at *5 (E.D. Ky. Sep. 29, 2017).

Defendant contends that both parties believed that the 2002 Plan Agreement (and 2006 and 2007 Adoption Plan Agreements) were intended to compensate Defendant during retirement at 70% of his base annual salary and the 2007 Adoption Plan Agreement, in particular, contained the scrivener's error of basing his retirement benefits on Defendant's base annual salary at age 66 rather than on his base annual salary at the time of his retirement. Defendant alleges that intent is evidenced by the comments of members of the Board of Directors at the June 22, 2017 Executive Committee meeting that they "originally" intended to make such modifications to Defendant's retirement plan. *See, e.g.*, ECF No. 10, at ¶¶ 16-19, 84-87. Defendant

asserts that this constitutes sufficient extrinsic evidence upon which the Court could grant equitable relief based on the parties "justified expectations" as to the calculation for compensation.

Plaintiff also states that Defendant's reformation of contract claim is time-barred. "Although ERISA does not provide a statute of limitations for benefit claims, this Court has noted that such claims are governed by the most analogous state statute of limitations, which is that for breach of contract." *Santino v. Provident Life and Acc. Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001) (citing *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 194–95 (6th Cir. 1992)). "The Michigan breach of contract statute of limitations is six years." *Id.* (citing MCL § 600.5807(8)). Under MCL § 600.5827, "the claim accrues at the time the wrong upon which the claim is based is done regardless of the time when damage results." *Reynolds v. Empire Financial Network*, 2013 WL 811540, at *3 (E.D. Mich. Mar. 5, 2013); *see also, St. Clair Inn, LLC v. Transcapital Bank*, 2015 WL 1313835, at *12 (Mich. Ct. App. Mar. 24, 2015) (holding that a claim for reformation of a deed accrued at the time of the conveyance through which plaintiff claimed title); *Am. Annuity Grp. v. Guar. Reassurance Corp. Liquidating Tr.*, 55 F. App'x 255 (6th Cir. 2003) (holding that a counterclaim based on reformation under the doctrine of unilateral or mutual mistake was time-barred by a Florida statute of limitations). Plaintiff states that the most

recent relevant document is the 2007 Adoption Plan Agreement – which was signed more than 11 years before this case was filed.

Plaintiff argues that there was no mutual mistake of the parties because Defendant, on behalf of Plaintiff, signed the 2007 Plan Adoption Agreement that expressly provides that his benefits would include compensation of 85% of his base annual salary at age 66. For that reason, Plaintiff contends that any mistake in the 2007 Plan was Defendant's alone, as he signed it on behalf of Plaintiff – and the 2007 Plan was for his benefit. Plaintiff asserts that Defendant's claim accrued on December 26, 2007, when Defendant executed the 2007 Plan Adoption Agreement.

The Court concludes that Defendant's reformation of contract claim is time-barred because the relevant document (the one Defendant alleges should be reformed) was executed in 2007, well beyond the applicable six-year statute of limitations.

## VI. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendant's Motion to Dismiss Plaintiff's Complaint [ECF No. 16] is **GRANTED IN PART and DENIED IN PART.**

IT IS FURTHER ORDERED that Count I (breach of contract claim) and Count IV (claim for declaratory relief) of Plaintiff's Complaint are **DISMISSED** and Count II (claim for statutory conversion) and Count III (breach of fiduciary duty claim)

**REMAIN**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Dismissal of Counterclaim [ECF No. 11] is **GRANTED IN PART and DENIED IN PART**.

IT IS FURTHER ORDERED that Count I (failure to pay benefits due under the 2017 Supplemental Executive Retirement Plan, in violation of ERISA) and Count III (reformation of contract) are **DISMISSED** and Count II (equitable estoppel), Count IV (declaratory relief), and Count V (indemnification) **REMAIN**.

IT IS ORDERED.

s/Denise Page Hood
DENISE PAGE HOOD
Dated: May 31, 2020                    UNITED STATES DISTRICT JUDGE